UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

J.S.H.M.,

        Petitioner,

   v.

MINGA WOFFORD, et al.,

        Respondents.

No.  1:25-cv-01309-JLT-SKO (HC)

**FINDINGS AND RECOMMENDATION TO GRANT PETITION AND ISSUE PERMANENT INJUNCTION**

**[21-DAY OBJECTION DEADLINE]**

Petitioner J.S.H.M. is a native of Colombia who entered the United States without inspection on or about April 5, 2022. (Doc. 13 at 4.) He was apprehended by Border Patrol and released on April 6, 2022, "due to detention capacity" at the border holding facility. (Id.)  The record indicates that Department of Homeland Security ("DHS") paroled him pursuant to INA 212(d)(5) [8 U.S.C. § 1182(d)(5)], which allows for discretionary parole into the United States "under such conditions as [DHS] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." (Id. at 11.) J.S.H.M. was required to comply with the terms of the Alternatives to Detention (ATD) program "as a condition of Parole." (Id. at 6.) The ATD enrollment form he signed that day indicated, as pertinent:

> Your release is contingent upon your enrollment and successful participation in an Alternatives to Detention (ATD) program as designated by the U.S. Department of Homeland Security. As part of the ATD program, you will be subject to electronic monitoring and may be subject to a curfew. Failure to comply with the requirements of the ATD program will result in a redetermination of your release conditions or your arrest and detention.

(Doc. 13 at 8.)

Petitioner, his wife, and child appeared in person at the San Francisco ICE office as instructed on April 21, 2022. (Doc. 13 at 11.) At that appointment, "the family unit" was "placed on ATD SMARTLINK technology, a monitoring application for his personal cell phone." (Id.; Doc. 1 ¶ 8.) The program required J.S.H.M. to take a photo every week, answer phone calls from ISAP officers, and report periodically in-person at the Intensive Supervision Appearance Program (ISAP) and ICE offices. (Doc. 1, ¶ 8.) Petitioner was also served with a Notice to Appear (NTA) in the mail indicating he was "[i]n removal proceedings under section 240 of the Immigration and Nationality Act." (Doc. 13 at 14.)

J.S.H.M. admits that "on one occasion" he "submitted his weekly photo check-in one day after the deadline, because of his work schedule," but "[h]e communicated the reason for the delay to his ISAP officer." (Doc. 1 ¶ 9.) He also admits to submitting his photo "a few minutes late on a few occasions because he was driving and could not stop safely and immediately." (Id.) He indicates that he communicated the reason for those delays to his ISAP officer and never received any formal warnings, threats of arrest, or formal notice of non-compliance from ISAP officials regarding those "sporadic incidents." (Id.)

Respondents describe Petitioner's compliance differently:

> Petitioner continually missed ISAP check-in appointments, missing appointments on no less than 34 separate occasions, including on May 19, 2022; June 2, 2022; July 7, 2022; August 18, 2022; September 8, 2022; September 15, 2022; November 3, 2022; November 10, 2022; December 22, 2022; December 29, 2022; January 5, 2023; June 29, 2023; July 13, 2023; September 4, 2023; September 18, 2023; September 25, 2023; October 2, 2023; November 20, 2023; December 4, 2023; December 18, 2023; December 25, 2023; January 1, 2024; March 7, 2024; April 1, 2024; April 22, 2024; May 6, 2024; July 1, 2024; July 15, 2024; July 22, 2024; August 12, 2024; August 26, 2024; September 9, 2024; October 17, 2024; and September 15, 2025.

(Doc. 10 at 2; Doc. 10-1, ¶ 10-13; Doc. 13 at 18.) According to Respondents, ICE's Enforcement and Removal Operations (ERO) increased the level of supervision applicable to Petitioner two times because of his violations. (Doc. 10-1, ¶ 10.)

Since entering the United States, J.S.H.M. has established a life in Oakland, California, where he has been working as a driver. (Doc. 1, ¶ 10.) He obtained an employment authorization document and holds a current California's driver's license. (Doc. 1, ¶ 11.) J.S.H.M. also timely

filed for asylum and withholding of removal, with his final, individual hearing scheduled for 2027 in San Francisco. (Doc. 1, ¶ 11.) It is undisputed that Petitioner has no criminal history. (Doc. 13 at 21.)

On September 22, 2025, pursuant to instructions from ICE, J.S.H.M. presented himself for a scheduled check-in at the San Francisco ICE Field Office. (Doc. 1, ¶ 12.) Eventually, J.S.H.M. was informed that he was under arrest. (Id., ¶ 14.) According to Petitioner, when he asked for a reason, "the officers were vague, stating only that it was 'their work' and that there were unspecified 'problems with [his] reporting.'" (Id.) Petitioner alleges that ICE refused to give him additional details. (Id.) According to the Form I-831 prepared by ICE that day, an ICE agent informed Petitioner that he was not fully compliant with the ATD case program and that he was being taken into custody due to "violation of his OREC conditions." (Doc. 13 at 21.)

On October 4, 2025, J.S.H.M. filed a first amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that his detention violates both substantive and procedural due process under the Fifth Amendment. (Doc. 3.) He has also filed an ex parte motion for a temporary restraining order that sought: (1) immediate release from Respondents' custody; (2) an injunction barring Respondents from re-detaining Petitioner unless they demonstrate at a pre-deprivation hearing, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community; and (3) an order prohibiting the government from "sending him to any place outside of the United States." (Doc. 2 at 30.)

On October 16, 2025, the District Court converted the motion for temporary restraining order into a motion for preliminary injunction and granted the motion in part. (Doc. 15.) Respondents were ordered to provide Petitioner with a bond hearing before an Immigration Judge within ten (10) days. On November 10, 2025, Respondents filed a status report indicating Petitioner had received a bond hearing before an Immigration Judge, and he had been ordered released on bond. (Doc. 17.)

## I.    JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004)

(citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

**III.     DISCUSSION**

Civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Petitioner contends that Respondents have wrongly re-detained him without first affording him proper due process including notice and a pre-deprivation hearing. (Doc. 3 at 30-32.)

As the basis for Petitioner's detention, Respondents urge the Court to adopt reasoning consistent with new DHS guidance—that Petitioner's recent re-detention is mandatory under section 1225(b).  (Doc. 10 at 5-6.) Accordingly, before turning to the standard due process analysis, the Court will address the threshold matter of whether Petitioner's re-detention is properly understood to be authorized by section 1225(b) as Respondents contend or under section 1226(a) as Petitioner contends.

When first presented with the Government's new interpretation of section 1225(b), some courts described this read of the statute as "novel."  See, e.g., Barrera v. Tindall, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *5 (W.D. Ky. Sept. 19, 2025).  Since then, this interpretation has been almost universally rejected by district courts throughout the country, including this Court. Valencia v. Chestnut, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (noting that "[h]ere in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b)(2) as applicable to all 'applicants for admission,'" recognizing "[o]ther district courts have also reached the result that Section 1226(a), not Section 1225(b)(2), provides the appropriate framework for noncitizens already residing in the United States," and collecting cases). As it has done on previous occasions, this Court recommends following the

majority approach in finding that Petitioner's re-detention is governed by § 1226(a), not § 1225(b). See, e.g., Ortiz Donis v. Chestnut, 1:25-CV-01228-JLT, 2025 WL 2879514 at *3–6 (E.D. Cal. Oct. 9, 2025); see also M.R.R. v. Chestnut, No. 1:25-CV-01517-JLT, 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025); Hortua v. Chestnut, et al., No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025); Barco Mercado v. Francis, No. 25-CV-6582 (LAK), ––– F.Supp.3d ––––, ––––, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (estimating over 350 cases ruled the DHS policy improper across 160 different judges sitting in about 50 different courts nationwide); Mirley Adriana Bautista Pico v. Kristi Noem, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases); Armando Modesto Estrada-Samayoa v. Orestes Cruz, No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).

The Court next turns to the analysis of Petitioner's due process claim. Due process claims are analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

## A. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147–49 (1997). Even when a statute allows the Government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by

Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [Government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481–84.

Immigration officials' April 6, 2022, release of Petitioner on his own recognizance pending his immigration proceedings was similar, in that it allowed him to live in the country subject to supervision, but outside of custody, for over 3 years. And that time inherently allowed Petitioner to form "enduring attachments of normal life." Id. at 482. The Court concludes that Petitioner's original release and time out of custody gave rise to a constitutionally protective liberty interest.

Because the Court concludes that Petitioner has a protected liberty interest in his release, see Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); Ortega v. Kaiser, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest), the Court must next determine what process is due before the Government may terminate Petitioner's liberty.

//

//

**B. The <u>Mathews</u> Factors Demonstrate Petitioner is Entitled to a Pre-Deprivation Bond Hearing**

Due process "is a flexible concept that varies with the particular situation." <u>Zinermon v. Burch</u>, 494 U.S. 113, 127 (1990).  The procedural protections required in a given situation may be evaluated using the <u>Mathews v. Eldridge</u> factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

<u>Id</u>. (quoting <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976)); <u>see</u> <u>Hernandez v. Sessions</u>, 872 F.3d 976, 993 (9th Cir. 2017) (applying <u>Mathews</u> factors in immigration detention context).

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention.  "Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." <u>Zadvydas v. Davis</u>, 533 U.S. 678, 690 (2001).  Petitioner had been out of custody for over 3 years, and during that time, he has lived, worked, and developed ties in the community. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the Petitioner] ha[d] not received any bond or custody redetermination hearing." <u>A.E. v. Andrews</u>, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community, <u>see</u> <u>Zadvydas</u>, 533 U.S. at 690; <u>Padilla</u>, 704 F. Supp. 3d at 1172; yet here, Petitioner has no criminal history.

Respondents assert that Petitioner performed abysmally on his order of supervision, and his numerous violations of his release conditions constituted a change in circumstances justifying re-detention. Petitioner contends he communicated the reason for those delays to his ISAP officer and never received any formal warnings, threats of arrest, or formal notice of non-compliance from ISAP officials regarding those incidents.  Even if Respondents made their determination

7

based on Petitioner's infractions, the Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." See Zinermon, 494 U.S. at 127. However, the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. Id. at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ").

Third, although the Government has a strong interest in enforcing the immigration laws, the Government's interest in re-detaining Petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025).  In immigration court, custody hearings are routine and impose a "minimal" cost.  Doe, 2025 WL 691664, at *6.  "If the Government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." Ortega, 415 F. Supp. 3d at 970.

Upon review of the Mathews factors, the District Court determined that Petitioner was entitled to a bond hearing. He has since been provided a bond hearing and released. As to Petitioner's procedural due process claim, this Court finds that Petitioner's rights were violated when he was re-detained without notice and an opportunity to be heard.  "'[T]he root requirement' of the Due Process Clause" is "that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)); see Zinermon, 494 U.S. at 127 ("[a]pplying [the Mathews] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty").

**IV.    CONCLUSION & RECOMMENDATION**

The Court therefore concludes that Respondents violated Petitioner's due process rights in the manner in which they re-detained Petitioner. In addition, the Court concludes that

Respondent's incorrectly detained Petitioner pursuant to 8 U.S.C. § 1225(b) rather than § 1226(a). For the foregoing reasons, the Court hereby RECOMMENDS:

1) The petition for writ of habeas corpus be GRANTED; and

2) Respondents be PERMANENTLY ENJOINED and RESTRAINED from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner presents a flight risk or danger to the community. In the event urgent concerns require Petitioner's immediate arrest and re-detention, Respondents should be directed to provide Petitioner with a post-deprivation hearing within seven (7) days of re-detention.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **March 9, 2026**                     /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE

9